## HALES v. RASMUSSEN.

No. 20796. Opinion Filed April 5, 1932.

Allen & Jarman and B. C. Logsdon, for plaintiff in error.

W. R. Withington, for defendant in error.

KORNEGAY, J. This proceeding began in the lower court by the filing of a petition asking for specific performance and to require a conveyance of the land described in a writing, as follows:

"Option To Purchase Oil And Gas Royalties.

"For a valuable consideration, I, H. Rasmussen, 203 W. Noble St. of Ok. City, state of Okla., hereby give and grant unto S. W. Hales an option to purchase fee simple including ½ or 40 acres of royalty and full lease situated in the county of Okla., state of Okla., to wit:

"West one-half of northeast quarter of section 16, in township 11 N., range 1 W., containing 80 acres, more or less.

"This option is to be in full force and effect for a term of 24 hrs. or 2 p. m. from and after the 7th day of Dec., A. D. 1928.

"Should purchaser, his heirs, executors, administrators or assigns decide to exercise the right under the option to purchase the said fee simple in the aforesaid lands, the consideration in full therefor shall be one hundred dollars per acre.

"* * * agrees to furnish abstract of title to said lands, subject to the approval of purchaser, his executors, administrators and assigns, and to execute and deliver all papers necessary to complete title in purchaser.

"(Signed) H. Rasmussen."

Petition was filed on the 10th of December, 1928. It alleged that on or about the 7th day of December, 1928, this contract was made, and it is claimed to be exhibit "A," but the record does not show it, though it was introduced in evidence.

Several defenses were made, among others a general denial, and another that when the contract was made the option by its terms would expire on the 7th of December, 1928, and there had been a change so as to make it expire on the 8th of December, 1928. Further defense was made that the option to purchase had not been exercised, and no tender had been made of the purchase price, and there was no consideration for the option, and that the true date of the writing was the 6th of December, 1928, and that before the plaintiff had exercised any rights under it, he was notified that the offer contained therein had been withdrawn. Another defense was that he did not own the full lease rights on the premises, and another that the option had been withdrawn by the defendant in good faith.

A special judge was selected by the parties to try the case, and he took his oath of office, and the opening statements were made and the evidence introduced, the only testimony being that of the parties. It appears from the evidence that within the first 24 hours the parties met at the Kingkade Hotel and there negotiations were broken off, and that the plaintiff consulted some attorneys in the city, and that a letter was written by them on December 7th to the defendant, which, omitting the address and heading, is as follows:

"Dear Sir:

"Mr. S. W. Hales, to whom you gave a written contract or option to sell the fee-simple title, including 40 acres of royalty and a full lease in the west half of the northeast quarter of 16-11N-1W., containing 80 acres, more or less, has placed this, along with other business matters. in our hands to look after and to attend to for him.

"This contract provides that the deal is to be made by 2 o'clock tomorrow afternoon, and this is to advise that we will be ready to execute our part of the agreement, and if convenient kindly call at our office as early as you can tomorrow, so we can get the matter disposed of and out of the way. Please give this your prompt attention.

"Yours very truly,"

The lower court heard the evidence and the contentions of the various parties. We cannot say, from the examination of the record, that the court would have been justified under the conditions in decreeing specific performance. It is clear that the party did not own the property in its entirety, as embraced in the option. It is further clear that nothing was ever offered

to the defendant below or contracted to be given him for the option. It shows unquestionably that the plaintiff below knew pretty well what oil was, and was dealing in options and royalties and engaged in getting others to take what he contracted for, and that he had in his grip some forms for taking these, and he was schooled in those matters. It is very evident that the defendant knew little of such things.

It would not appeal very strongly to the conscience of a chancellor, under these conditions, to grant specific performance. It is very evident that the option was signed on the 6th of December and 7th was inserted in the writing by mistake, and that the landowner was not furnished a copy so that he could have declared on it in the event he had desired to do so, and it is further evident that if he had receiped a copy, the man who took the option could not, under it, have been compelled to do anything.

No special findings were asked for in the court below, and the judgment was that the petition for specific performance should be denied, and judgment should go in favor of the defendant for costs.

The matter has been brought here by proceeding in error, and very frankly it is confessed in the brief that the option itself was a nullity by reason of its being unilateral, and not based on any consideration moving to the defendant below. It is also conceded that the defendant below did not have all of the title that was required by the paper writing prepared by the plaintiff, but acceptance is relied upon as a foundation for the suit. Just when that acceptance was, in view of the action at the hotel, and in view of the letter written by the attorneys, is rather difficult to ascertain, if one examines into the circumstances to determine what happened in the progress of negotiations.

The assignments are that the judgment was wrong in practical effect, and a second assignment was that the court erred in allowing a trial amendment setting up mutual mistake of fact. We are unable to see how the latter affected the matter, as the evidence most clearly showed that there was a difference between what the defendant owned and what was embraced in the paper writing. We have such a thing as a decree in specific performance with abatement of price for that which is lacking, but ordinarily a court of equity tries to do equity between the parties.

The lower court saw the parties in this case, and decided generally against the plaintiff. Most clearly, no right of the plaintiff below was prejudiced by the amendment, and it should have been allowed. If, however, the plaintiff was taken by surprise, he should have signified something about it in the court below and asked for a postponement in order that he might get some more testimony or something, though it does not appear that any more testimony would have been available, as the transaction was very short and the actors in it were merely plaintiff and defendant.

Several authorities are cited bearing upon phases of the law of specific performance and are quoted from, but we do not think that the reasoning therein contained would tend towards a reversal in this case.

The lower court saw the witnesses, and it was largely a question of fact. He observed their demeanor, and while there is very little conflict between the witnesses, yet what conflict there was the court evidently resolved in favor of the defendant, and made the general findings. The evidence was sufficient to support the findings, and we find no error in the action of the lower court.

The case is accordingly affirmed.

LESTER, C. J., and RILEY, HEFNER, SWINDALL, and McNEILL, JJ., concur. CLARK, V. C. J., and CULLISON, and ANDREWS, JJ., absent.